FILED by __TM__ D.C.
ELECTRONIC

Jun 7, 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## 12-80108-CR-MIDDLEBROOKS-W/BRANNON
CASE NO. _____

18 U.S.C. § 1349

UNITED STATES OF AMERICA

v.

YULIET TAPANES,
MOISES MADRID,
DAGOBERTO MILIAN LOPEZ,
a/k/a "Lavadora,"
AMAURYS HERNANDEZ, a/k/a "El Manco,"
GILDA GARCIA, a/k/a "Hilda,"
a/k/a "La Que Carta,"
JAVIER DE LA CARIDAD TRONCOSO,
ANA OVANDO, and
JANICE VELEZ,

    Defendants.
_____/

### INDICTMENT

The Grand Jury charges:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. New York Medical & Rehab Center ("New York Medical") was a clinic located at 1850 Forest Hill Boulevard, Suite 200, Lake Clarke Shores, Florida, in Palm Beach County, in the Southern District of Florida, that purported to offer chiropractic and massage therapy for persons who suffered injuries in automobile accidents.

2. Chiropractic Office of South Florida ("COSF") was a clinic located at 3401 South Congress Avenue, Suite 103, Palm Springs, Florida, in Palm Beach County, in the Southern District

of Florida, that purported to offer chiropractic and massage therapy for persons who suffered injuries in automobile accidents.

3. A clinic known to the Grand Jury, hereinafter referred to as "KCC," was a clinic located in West Palm Beach, Florida, in Palm Beach County, in the Southern District of Florida, that purported to offer chiropractic and massage therapy for persons who suffered injuries in automobile accidents.

4. Florida Mango Massage Therapy Center, Inc. ("FMMT") was a clinic located at 1850 Forest Hill Boulevard, Suite 102, Lake Clarke Shores, Florida, in Palm Beach County, in the Southern District of Florida, that purported to offer chiropractic and massage therapy for persons who suffered injuries in automobile accidents.

5. None of the Defendants were licensed chiropractic physicians.

6. Defendant MOISES MADRID was a licensed massage therapist ("LMT").

7. Florida was a "no-fault" insurance state, which required every driver to maintain insurance. Under the "Florida Motor Vehicle No-Fault Law," Fl. Stat. §§ 627.730-627.7405, by requiring all drivers to maintain insurance, persons who were injured had recourse to "medical, surgical, funeral, and disability insurance benefits without regard to fault, . . . and, with respect to motor vehicle accidents, a limitation [is imposed] on the right to claim damages for pain, suffering, mental anguish, and inconvenience." Fl. Stat. § 627.731. The required insurance had to include personal injury protection ("PIP") to the named insured, relatives residing in the same household, persons operating the insured vehicle, passengers in the vehicle, and other persons struck by the vehicle who suffered bodily injury while not occupants of another vehicle to a limit of $10,000 for each such person as a result of bodily injury, sickness, disease, or death. Fl. Stat. § 627.736(1).

8. Under Florida law, the insurance provider was required to pay PIP benefits of up to $10,000 each for "accidental bodily injury" sustained by the vehicle owner and all occupants of the vehicle due to the accident. Fl. Stat. § 627.736(4)(e). The majority of those PIP benefits were paid for medical benefits that, by law, were required to cover "[e]ighty percent of all reasonable expenses for medically necessary medical, surgical, x-ray, dental, and rehabilitative services . . . that are lawfully provided, supervised, ordered, or prescribed" by a licensed physician, licensed dentist, or licensed chiropractic physician, or that are provided by certain other approved providers, including entities wholly-owned by licensed chiropractic physicians. Fl. Stat. § 627.736(1)(a). Except in limited instances, Florida law further required that insurers pay these PIP benefits within 30 days of receipt of the claim. If an insurer failed to do so, the insurer was required to pay interest on the claim. Fl. Stat. § 627.736(4)(b), (d).

9. 21st Century Insurance was a California insurance company that offered automobile insurance in Florida, including Personal Injury Protection ("PIP") coverage.

10. Affirmative Insurance Services was a Texas insurance company that offered automobile insurance in Florida, including PIP coverage.

11. Agency Insurance Company was a Maryland insurance company that offered automobile insurance in Florida, including PIP coverage.

12. AIG National Insurance Co. was a New York insurance company that offered automobile insurance in Florida, including PIP coverage.

13. Allied Property & Casualty was an Iowa insurance company that offered automobile insurance in Florida, including PIP coverage.

14. Allstate Insurance Company was an Illinois insurance company that offered

automobile insurance in Florida, including PIP coverage.

15. American Vehicle Insurance was a Florida insurance company that offered automobile insurance in Florida, including PIP coverage.

16. Ameriprise Auto & Home (also d/b/a IDS Property Casualty Insurance Company) was a Wisconsin insurance company that offered automobile insurance in Florida, including PIP coverage.

17. Apollo Casualty Company was an Illinois insurance company that offered automobile insurance in Florida, including PIP coverage.

18. AssuranceAmerica Corporation was a South Carolina insurance company that offered automobile insurance in Florida, including PIP coverage.

19. Bristol West Insurance was an Ohio insurance company that offered automobile insurance in Florida, including PIP coverage.

20. Castlepoint of Florida Insurance was a Florida insurance company that offered automobile insurance in Florida, including PIP coverage.

21. Corvel Corporation was a California insurance company that offered automobile insurance in Florida, including PIP coverage.

22. Direct General Insurance Co. was an Indiana insurance company that offered automobile insurance in Florida, including PIP coverage.

23. eSurance was a Wisconsin insurance company that offered automobile insurance in Florida, including PIP coverage.

24. Farmers Insurance was a California insurance company that offered automobile insurance in Florida, including PIP coverage.

25. First Acceptance Insurance Company, Inc. was a Tennessee insurance company that offered automobile insurance in Florida, including PIP coverage.

26. Florida Farm Bureau Insurance Companies was a Florida insurance company that offered automobile insurance in Florida, including PIP coverage.

27. GEICO, also d/b/a "Government Employees Insurance Company" was a Maryland insurance company that offered automobile insurance in Florida, including PIP coverage.

28. GMAC Insurance was a Missouri insurance company that offered automobile insurance in Florida, including PIP coverage.

29. Granada Insurance was a Florida insurance company that offered automobile insurance in Florida, including PIP coverage.

30. Hallmark Insurance Company was an Arizona insurance company that offered automobile insurance in Florida, including PIP coverage.

31. Infinity Insurance Company was an Indiana insurance company that offered automobile insurance in Florida, including PIP coverage.

32. Infinity Indemnity was an Indiana insurance company that offered automobile insurance in Florida, including PIP coverage.

33. Kingsway Amigo Insurance Company was a Florida insurance company that offered automobile insurance in Florida, including PIP coverage.

34. Liberty Mutual Insurance was a Massachusetts insurance company that offered automobile insurance in Florida, including PIP coverage.

35. Mapfre Insurance was a Massachusetts insurance company that offered automobile insurance in Florida, including PIP coverage.

36. Mendota Insurance Company was a Minnesota insurance company that offered automobile insurance in Florida, including PIP coverage.

37. Mercury Insurance Group was a California corporation that wholly-owned several California and Florida insurance companies that offered automobile insurance in Florida, including PIP coverage.

38. MetLife Auto & Home (also d/b/a Metropolitan Life Insurance Company) was a New York insurance company that offered automobile insurance in Florida, including PIP coverage.

39. MGA was a Florida insurance company that offered automobile insurance in Florida, including PIP coverage.

40. New Hampshire Indemnity Co. was a Georgia insurance company that offered automobile insurance in Florida, including PIP coverage.

41. Occidental Fire & Casualty was a North Carolina insurance company that offered automobile insurance in Florida, including PIP coverage.

42. Ocean Harbor Casualty Insurance was a Florida insurance company that offered automobile insurance in Florida, including PIP coverage.

43. Peak Property & Casualty was a Wisconsin insurance company that offered automobile insurance in Florida, including PIP coverage.

44. PGCS Claims Services was a Florida insurance company that offered automobile insurance in Florida, including PIP coverage.

45. Praetorian Insurance Co. was a Pennsylvania insurance company that offered automobile insurance in Florida, including PIP coverage.

46. Progressive American Insurance Company was an Ohio insurance company that

offered automobile insurance in Florida, including PIP coverage.

47. Redland Insurance Company was a New York insurance company that offered automobile insurance in Florida, including PIP coverage.

48. Safeco Insurance was a Washington insurance company that offered automobile insurance in Florida, including PIP coverage.

49. Security National Insurance Company Inc. was a Florida insurance company that offered automobile insurance in Florida, including PIP coverage.

50. Seminole Casualty Insurance was a Florida insurance company that offered automobile insurance in Florida, including PIP coverage.

51. Star Casualty Insurance was a Florida insurance company that offered automobile insurance in Florida, including PIP coverage.

52. State Farm Mutual Automobile Insurance Company was an Illinois insurance company that offered automobile insurance in Florida, including PIP coverage.

53. Travelers Insurance was a Connecticut insurance company that offered automobile insurance in Florida, including PIP coverage.

54. Unitrin Auto and Home Insurance Company was a New York insurance company that offered automobile insurance in Florida, including PIP coverage.

55. Victoria Fire & Casualty was an Ohio insurance company that offered automobile insurance in Florida, including PIP coverage.

56. Windhaven Insurance Company was a Florida insurance company that offered automobile insurance in Florida, including PIP coverage.

## COUNT 1
### Conspiracy to Commit Mail Fraud

57. Paragraphs 1 through 56 of the "General Allegations" section of this Indictment are re-alleged and incorporated herein.

58. From in or around February 2009, through in or around September 2011, the exact dates being unknown, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**YULIET TAPANES,**
**MOISES MADRID,**
**DAGOBERTO MILIAN LOPEZ,**
a/k/a "Lavadora,"
**AMAURYS HERNANDEZ, a/k/a "El Manco,"**
**GILDA GARCIA, a/k/a "Hilda,"**
a/k/a "La Que Carta,"
**JAVIER DE LA CARIDAD TRONCOSO,**
**ANA OVANDO, and**
**JANICE VELEZ,**

did knowingly and willfully combine, conspire, confederate, agree, and reach a tacit understanding with each other and with persons known and unknown to the Grand Jury to commit the offense of mail fraud, in violation of Title 18, United States Code, Section 1341.

### OBJECT OF THE CONSPIRACY

59. It was the object of the conspiracy for the defendants to unlawfully enrich themselves by submitting fraudulent PIP claims for chiropractic and massage therapy treatments for individuals who had participated in staged automobile accidents.

### MANNER AND MEANS OF THE CONSPIRACY

60. The manner and means by which the defendants sought to accomplish the object of the conspiracy included, among other things, the following:

(a) Defendants DAGOBERTO MILIAN-LOPEZ, a/k/a "Lavadora," AMAURYS HERNANDEZ, a/k/a "El Manco," and GILDA GARCIA, a/k/a "Hilda," a/k/a "La Que Carta," and persons known and unknown to the Grand Jury would recruit individuals, including Defendants JAVIER DE LA CARIDAD TRONCOSO, ANA OVANDO, and JANICE VELEZ, to participate in staged automobile accidents, and would instruct participants on how to conduct accidents, what to tell responding police officers, how to collect police reports, and what clinic to go to for treatment, even though the participants did not need treatment.

(b) Defendants YULIET TAPANES, MOISES MADRID, JAVIER DE LA CARIDAD TRONCOSO, ANA OVANDO, and JANICE VELEZ, and persons known and unknown to the Grand Jury prepared fraudulent insurance documentation for chiropractic and massage therapy treatments for the staged accident participants, that is, the documentation falsely stated that the treatments were medically necessary and that the patients had received the treatments when, in truth and in fact, the treatments were not necessary and, in most instances, were never received.

(c) Defendants YULIET TAPANES and MOISES MADRID and persons known and unknown to the Grand Jury prepared fraudulent PIP Automobile Insurance Claims, that is, the claims falsely stated that the charges had been incurred for massage therapy and chiropractic therapy treatments that were medically necessary and that the patients had received when, in truth and in fact, the staged accident participants neither needed nor, in most instances, received the claimed treatments, and the defendants and their co-conspirators submitted these claims to various automobile insurance companies via the United States Mail.

(d) Defendants YULIET TAPANES, MOISES MADRID, DAGOBERTO MILIAN-LOPEZ, a/k/a "Lavadora," AMAURYS HERNANDEZ, a/k/a "El Manco," and GILDA

GARCIA, a/k/a "Hilda," a/k/a "La Que Carta," and persons known and unknown to the Grand Jury instructed the staged accident participants on what to say to insurance company representatives and independent medical examination ("IME") physicians to make it appear as though the staged accident participants had actually needed and received therapy treatments when, in truth and in fact, they had not.

(e) Upon receiving the reimbursements from the automobile insurance companies via the United States Mail, Defendant YULIET TAPANES and persons known and unknown to the Grand Jury would cause the checks to be deposited into bank accounts controlled by persons known and unknown to the Grand Jury, and then withdraw the proceeds in cash, which would be used to pay the recruiters and staged accident participants, and to enrich members of the conspiracy.

All in violation of Title 18, United States Code, Section 1349.

A TRUE BILL

_____
FOREPERSON

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
A. MARIE VILLAFAÑA
ASSISTANT U.S. ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

YULIET TAPANES, et al,

Defendants.
_____/

CASE NO. _____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division**: (Select One)

____ Miami   ____ Key West
____ FTL    _X_ WPB   ____ FTP

New Defendant(s)           Yes ____   No ____
Number of New Defendants       ____
Total number of counts         ____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)   Yes
   List language and/or dialect   Spanish

4. This case will take  20-25  days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                          (Check only one)

   I    0 to 5 days      ____              Petty     ____
   II   6 to 10 days     ____              Minor     ____
   III  11 to 20 days    ____              Misdem.   ____
   IV   21 to 60 days    _X_               Felony    _X_
   V    61 days and over ____

6. Has this case been previously filed in this District Court? (Yes or No)   No
   If yes:
   Judge: _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?    (Yes or No)   No
   If yes:
   Magistrate Case No.                   N/A
   Related Miscellaneous numbers:        N/A
   Defendant(s) in federal custody as of N/A
   Defendant(s) in state custody as of   N/A
   Rule 20 from the    N/A              District of _____

   Is this a potential death penalty case? (Yes or No)   No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   ____ Yes   _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?   ____ Yes   _X_ No

_____
A. MARIE VILLAFAÑA
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0018255

*Penalty Sheet(s) attached                                          REV 4/8/08

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: <u>Yuliet Tapanes</u>

Case No.:_____

Count 1:

    18 U.S.C. § 1349

    Conspiracy to commit mail fraud

*Max. Penalty: <u>20 Years' Imprisonment; 3 years' Supervised Release; $250,000 Fine</u>

Count:



*Max. Penalty:

Count:



*Max. Penalty:

Count:



*Max. Penalty:

Count:



*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PENALTY SHEET

Defendant's Name:   Moises Madrid

Case No.:_____

Count 1:

   18 U.S.C. § 1349

   Conspiracy to commit mail fraud

*Max. Penalty: 20 Years' Imprisonment; 3 years' Supervised Release; $250,000 Fine

Count:


*Max. Penalty:


Count:


*Max. Penalty:


Count:


*Max. Penalty:


Count:


*Max. Penalty:


**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name:   <u>Dagoberto Milian Lopez, a/k/a "Lavadora"</u>

Case No.:_____

Count 1:

    <u>18 U.S.C. § 1349</u>

    <u>Conspiracy to commit mail fraud</u>

*Max. Penalty: <u>20 Years' Imprisonment; 3 years' Supervised Release; $250,000 Fine</u>

Count:

_____

*Max. Penalty:

Count:

_____

*Max. Penalty:

Count:

_____

*Max. Penalty:

Count:

_____

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PENALTY SHEET**

Defendant's Name:   Amaurys Hernandez, a/k/a "El Manco"

Case No.: _____

Count 1:

        18 U.S.C. § 1349

        Conspiracy to commit mail fraud

*Max. Penalty: 20 Years' Imprisonment; 3 years' Supervised Release; $250,000 Fine

Count:

*Max. Penalty:

Count:

*Max. Penalty:

Count:

*Max. Penalty:

Count:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name:   Gilda Garcia, a/k/a "Hilda," a/k/a "La Que Carta"

Case No.: _____

Count 1:

18 U.S.C. § 1349

Conspiracy to commit mail fraud

*Max. Penalty: 20 Years' Imprisonment; 3 years' Supervised Release; $250,000 Fine

Count:

*Max. Penalty:

Count:

*Max. Penalty:

Count:

*Max. Penalty:

Count:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PENALTY SHEET

Defendant's Name:   Javier De La Caridad Troncoso

Case No.: _____

Count 1:

18 U.S.C. § 1349

Conspiracy to commit mail fraud

*Max. Penalty: 20 Years' Imprisonment; 3 years' Supervised Release; $250,000 Fine

Count:

*Max. Penalty:

Count:

*Max. Penalty:

Count:

*Max. Penalty:

Count:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PENALTY SHEET

Defendant's Name: <u>Ana Ovando</u>

Case No.: _____

Count 1:

    <u>18 U.S.C. § 1349</u>

    <u>Conspiracy to commit mail fraud</u>

*Max. Penalty: <u>20 Years' Imprisonment; 3 years' Supervised Release; $250,000 Fine</u>

Count:

_____

*Max. Penalty:

Count:

_____

*Max. Penalty:

Count:

_____

*Max. Penalty:

Count:

_____

*Max. Penalty:

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PENALTY SHEET**

Defendant's Name:  Janice Velez

Case No.:_____

Count 1:

             18 U.S.C. § 1349

                   Conspiracy to commit mail fraud

*Max. Penalty: 20 Years' Imprisonment; 3 years' Supervised Release; $250,000 Fine

Count:



*Max. Penalty:

Count:



*Max. Penalty:

Count:



*Max. Penalty:

Count:



*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96